## McDONALD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 28, 1925.)

No. 6900.

**1. Conspiracy ☞43(6)—Indictment held to sufficiently set forth acts constituting purpose of conspiracy.**

Indictment charging defendant with conspiracy to injure and oppress postmaster in the exercise of rights secured to him by Constitution and laws of the United States *held* sufficient, as against contention it did not set forth acts constituting purpose of conspiracy.

**2. Conspiracy ☞48—Conflicting evidence as to intent and purpose of conspiracy presented question of fact for jury.**

In prosecution for conspiracy to injure and oppress a postmaster in the exercise of rights under Constitution and laws of the United States, conflicting evidence as to whether unlawful acts were intended to deprive postmaster of his office, or to punish him for an assault, *held* to present a question of fact for jury.

**3. Conspiracy ☞43(1)—Indictment charging conspiracy with six unknown persons sufficient to authorize prosecution after acquittal of other named defendants under court's instruction.**

In a prosecution for conspiracy, though other parties named in indictment were acquitted under instruction of court, indictment authorized continuance of prosecution, where it charged conspiracy with six other persons unknown to grand jurors.

**4. Conspiracy ☞48—Instruction on conspiracy with persons unknown held justified by indictment.**

Instruction on hypothesis that defendant conspired "with persons unknown" to deprive postmaster of his office *held* warranted by indictment.

**5. Criminal law ☞24—Presumption that men intend natural consequences of their acts not applicable, in presence of positive proof of different intent.**

While men are presumed to intend the natural consequences of their acts, such presumption cannot prevail, in presence of positive proof of a different intent, and, when such evidence is present, government must present affirmative evidence of the required unlawful intent.

**6. Criminal law ☞24—Instruction that intent would be presumed to deprive postmaster of office held erroneous.**

In a prosecution for conspiracy, an instruction that if defendant knew party was postmaster, and knew that whipping and intimidation would deprive him of his office, the intent to do so would be presumed, *held* erroneous.

**7. Criminal law ☞829(1)—Requested charge, covered by given charge, properly refused, though stating law better than charge given.**

Where a requested charge was covered in substance by a charge given, it was properly refused, though it stated the law better than the one given.

In Error to the United States District Court for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Elmer McDonald was convicted of conspiracy to injure and oppress a postmaster in the exercise of rights secured to him by Constitution and laws of the United States, and he brings error. Reversed and remanded for new trial.

Malcolm E. Rosser, of Muskogee, Okl. (T. C. Humphry, of Hugo, Okl., and L. E. Mifflin, of Idabel, Okl., on the brief), for plaintiff in error.

O. H. Graves, Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is a writ of error from a conviction of conspiracy to injure and oppress one A. J. Akard in the exercise of rights secured to him by the Constitution and laws of the United States, to wit, the right to hold and exercise the office of postmaster at Ida, Okl. Five points are argued in support of the writ of error.

[1] I. The indictment is attacked on the ground that it does not sufficiently set forth the act constituting the purpose of the conspiracy. The indictment charges that McDonald, in conjunction with three other named persons, conspired to injure and oppress Akard in the enjoyment of his right to exercise the office of postmaster at Ida, Okl. It further charges:

"That on the 5th day of June, 1922, the said Elmer McDonald, Marvin McDonald, Lee Watson and Jesse Walden, and six other persons, whose names are to the grand jurors unknown, in the county of McCurtain, in the state of Oklahoma, and within the jurisdiction of this court, with the intent to execute and carry into effect their aforesaid unlawful and felonious conspiracy against the said A. J. Akard, did, then and there, willfully, knowingly, unlawfully and feloniously, confederate and agree together and among themselves, with force and arms, to injure and oppress the said A. J. Akard in the free exercise and enjoyment of his aforesaid rights and privileges secured to him by the Constitution and laws of the United States."

Thereafter, the indictment continues that, "* * * in pursuance of said unlawful and felonious agreement, combination and conspiracy, and in the prosecution thereof" defendants bound and, with a revolver and whips, attacked Akard and directed him "to leave the country before sunset of the following day." Not only was the charge in the general language of the statute but the indictment set forth the manner and acts intended to bring about the unlawful result. This indictment clearly stated the offense charged and that statement was sufficient under the statute claimed to have been violated. There can be no doubt that this indictment sufficiently and particularly informed accused of the crime charged and that a prosecution thereunder would completely bar a second prosecution for the same offense. It would be impossible to frame another indictment containing sufficient allegations and charging the same offense in a way that the slightest comparison with the present indictment would not at once identify the two.

[2] II. It is contended that error was committed in overruling a motion in the nature of a demurrer to all of the evidence. Two grounds for this contention are urged. The first is the insufficiency of the evidence. It is urged that the evidence showed that whatever was done concerning Akard was done because of his alleged conduct toward a girl and had no relation whatever to his position as postmaster. There was little question in the evidence that this defendant and others had tied and beaten Akard and ordered him to leave the vicinity. Even the evidence of Akard himself rather strongly points to the conclusion that the purpose of the unlawful acts was to punish him for an assault which he was accused of having committed upon a girl in the neighborhood. However, there was evidence from which the jury might reasonably infer that the true purpose was to deprive him of his office and that the girl incident was a mere pretense. This conflict of evidence as to intent presented a question of fact to be determined by the jury.

[3] Another reason for urging the above error is that the three parties specifically named as having been in the conspiracy with McDonald were acquitted under the instruction of the court; that there was no other sufficient charge in the indictment of any conspiracy with other than the three acquitted and that a conspiracy cannot exist in one person alone. This position is unsound because the indictment does sufficiently charge the conspiracy was not only between Mc-

Donald and three persons named but "six other persons whose names are to the grand jurors unknown." It is true that, in the first part of the indictment, only the four parties are alleged to have conspired but in the later paragraph thereof the above charge is made.

[4] III. It is contended that the court erred in instructing the jury, in substance, that if the defendant conspired with persons unknown to deprive Akard of his office, the fact that they had or expressed an additional reason would not be a defense if the primary purpose was to prevent him from exercising the duties of postmaster. The reasons urged for this contention are that it assumes that the indictment charged the defendant with conspiracy with persons unknown and that there was no evidence justifying the instruction because all of the evidence showed that the primary purpose was to punish him for his conduct toward the girl. Both of these grounds are insufficient for the reasons above set forth in connection with points I and II.

[5, 6] IV. It is contended that the court erred in charging the jury, in substance, that if the defendant knew that Akard was postmaster and knew that the whipping and intimidation would deprive him thereof, the intent to so deprive him would be presumed. After charging the jury that the intent and purpose with which the acts were done was material and essential to a commission of the offense and that the jury must find that the primary purpose and intent was to run Akard "out of the community" in order that he could not go ahead and perform and exercise the duties imposed on him as postmaster at Ida and after further charging that if "the only purpose" or "primary purpose" of the acts was to inflict punishment for some alleged wrongdoing on the part of Akard, he would not be guilty, the court continued as follows:

"A person under the law is presumed to intend the natural and probable consequences of his acts. In other words the intent is always presumed where the means used was such as to bring about the natural result. For instance when assault is made by the use of a deadly weapon the law presumes there was intent to kill. In this case if the defendant, Elmer McDonald, and his co-confederates, if you find he had any, knew that A. J. Akard was postmaster at Ida, and beat, whipped and demanded of him that he leave the country, and knew that the natural and probable result of such whipping and beating and intimidation would

deprive Akard as postmaster of his constitutional right of discharging the duties of such office, in such situation the intent to deprive Akard of his constitutional right secured to him by the Constitution and laws of the United States will be presumed.

"What I mean to say by that, gentlemen, is simply this; if you know a man is postmaster, or if you know he is an internal revenue officer and that he is performing duties for the government of the United States, and you by force and threats, knowing him to be that kind of an officer, tell him he must leave the country and get out of the country, the presumption arises that you know that that would deprive him of a constitutional right guaranteed under the Constitution of the United States. So your duty in this case, and your sole duty, gentlemen of the jury, is to determine from all the evidence and circumstances before you whether or not you find beyond a reasonable doubt that this defendant, first, is guilty of the acts as charged and confederated and conspired with other persons unknown to the government, and that it was their intention by such intimidation, if you find they did exist, and such threats were made to deprive the prosecuting witness of his constitutional right as a citizen to discharge the duties of his office as postmaster, this is the question of fact that you must determine from the evidence before you."

The effect of this portion of the instruction was particularly emphasized in that the jury returned with the request that the portion of the charge dealing with intent be read to them again and the first paragraph above quoted was repeated to them. In our judgment this portion of the instruction was error of such a substantial nature as to necessitate reversal of this judgment. The statute here involved sets forth and requires a specific intent; that intent is a substantial element of the crime and must be proven. While it is a fundamental rule that men are presumed to intend the natural consequences of their acts, yet this presumption cannot prevail in the presence of positive proof of a specific intent different from that required by the statute. When such evidence is present, it devolves upon the government to present affirmative evidence of the existence of the required unlawful intent. This is well expressed by Judge Hook, in a case in this court, Buchanan v. United States, 233 F. 257, 258, 147 C. C. A. 263, 264, where he says:

"Intent in respect of the federal right is an essential element of the offense charged. See United States v. Waddell, 112 U. S. 76, 80, 5 S. Ct. 35, 28 L. Ed. 673. The legal quality and consequences of an act are not always apparent or definitely indicated. Some acts are of such an equivocal or ambiguous character that the judicial inquiry turns wholly upon the particular motive which may be disclosed by extrinsic evidence. The murder of a homestead entryman, for example, would effectually prevent him from perfecting and enjoying his entry, but it may have been the result of private personal malice without relation to his tenure."

Also see Janes et al. v. United States, 6 F.(2d) 545, in this court, involving an offense under this same statute.

[7] V. Error is urged because of refusal of a request to charge. The request was as follows:

"You are instructed that before you can convict the defendants you must believe from the evidence beyond a reasonable doubt that they conspired together to prevent the prosecuting witness, Akard, from discharging the duties of the office of postmaster and that pursuant to the conspiracy and in furtherance thereof they beat and threatened Akard for the purpose and with the specific intent to prevent him from discharging the duties of the office of postmaster; and you are instructed that although they conspired together to beat and threaten the prosecuting witness, Akard, yet if the conspiracy and beating was because of the reports they had heard about his conduct toward the girl, or for any other reason except the specific intent to prevent him from discharging and performing the duties of postmaster, the defendants must be acquitted, and the fact that if Akard had been driven out of the state he could not perform the duties of postmaster, would not make the defendants guilty unless they conspired with the specific intent to prevent him from discharging the duties of postmaster."

This was refused on the theory that it was covered in the charge given. The request stated the law better than the charge but the charge sufficiently incorporated the substance of the request. However, as the case is to be retried, something in the nature of this request should be given if asked.

For the above error in the charge, the judgment must be and is reversed and the case remanded for a new trial.