## MOORE v. KING, Warden.
### No. 12444.

Circuit Court of Appeals, Eighth Circuit.
Sept. 25, 1942.

858

Samuel Moore pro se.

No appearance for respondent.

Before STONE, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

PER CURIAM.

December, 1941, petitioner lodged his petition for a writ of habeas corpus in the office of the clerk of the United States District Court for the Southern Division of the Western District of Missouri, and has also filed his application that he may be permitted to prosecute his appeal in forma pauperis.

October 5, 1891, petitioner was indicted in the Supreme Court of the District of Columbia, charged with the murder of one Henry Jandorf, was convicted thereof on the 28th day of that month, and October 31st, was sentenced to be executed on Friday, January 15, 1892. Prior to the latter date it was represented to the President by the trial Justice and by the United States Attorney, who prosecuted the case, that the petitioner herein was at the time a mere youth and very ignorant; and that, if the law relating to crimes and their punishment within said district recognized degrees of murder, in all probability the jury which tried the case would have found a verdict of murder in the second degree; and, therefore, a commutation of the death sentence, as prayed for, to imprisonment for life would be in accordance with such supposed verdict and would probably meet the demands of justice.

January 9, 1892, the President of the United States, in consideration of the premises, commuted the death sentence of petitioner to imprisonment for life at hard labor in the penitentiary at Albany in the State of New York. Press comments at the time, incorporated in this record, re-

flect the current view of the matter in the following quotation from an interview with the then United States Attorney. He said:

"In cases where malice is presumed from the use of a deadly weapon, and there is no express malice shown, the verdict should be murder in the second degree. He said he had no idea that Moore intended to kill Jandorf when he dealt the blow. He simply struck him and didn't care much about the consequences."

Ultimately petitioner was transferred for confinement to the Medical Center for Federal Prisoners at Springfield, Missouri, a hospital for the care and treatment of offenders against the United States who are, or shall become, so defective mentally or physically as to require special medical care and treatment not available in an existing Federal institution. 18 U.S.C.A. § 871. The warden of the Medical Center is the respondent herein. The return of the warden recites that the petitioner was convicted, sentenced and committed by a United States District Court and was removed; and, after the date of said commitment was transferred by the direction of the Attorney General of the United States to the Medical Center for Federal Prisoners at Springfield, Missouri, to be kept therein in accordance with the terms of the judgment, sentence, commitment, and said order of removal and transfer. He denies all allegations in conflict with such authority, asks for strict proof in such case, and prays that the writ of habeas corpus be denied. The matter was heard by the district court with strict indulgence to all the rights and interests of the petitioner. It found that the constitutional rights of the petitioner had been fully protected, that he was then in the legal custody of the respondent, that the district court had no jurisdiction in the premises, and that the writ of habeas corpus should be denied.

In his "list of contentions in the writ on which I was denied in the Springfield Court, and for which I now entreat a rehearing through your court", and also the "Supersedure Brief" just received, which, together, we treat as an assignment of errors, petitioner specifies, (1) at the time of trial there were no recognized degrees of murder between first degree and manslaughter; therefore, if the evidence did not sustain the charge of first degree murder, the conviction could not be for a greater degree than manslaughter, which carried a maximum punishment of ten years; (2) emphasis is placed upon the alleged negligence of Congress in failing to provide explicitly for such degrees of homicide and upon the failure of the court to instruct an "ignorant jury" of the failure of the evidence to sustain the charge of first degree murder. This is based upon the alleged statements of the trial judge and the district attorney, contained in newspaper articles, and in the order of commutation. (3) The fact that petitioner did not ask for commutation, which he asserts was applied for by the trial judge and district attorney in a spirit of shame at the unfair advantage taken of his ignorance, and an attempt to rectify matters by appeal to the Executive. (4) Then follows a charge against the attorney, appointed by the court in the habeas corpus proceeding, for his alleged failure to attempt to support petitioner's allegations of ground for relief.

The foregoing states fully the substance of the more elaborate contentions urged. The record presented contains no copy of the indictment, nor other papers or documents which could throw further light upon the issues presented. The petitioner states that these papers "were lost in the transference from one prison to another".

The points urged by the petitioner in asking for reversal by this court are not such as can properly be addressed to our jurisdiction nor to that of the trial court. More than fifty years have passed since his indictment, trial, conviction and sentence, and since the commutation of that sentence by the President of the United States. The Supreme Court of the District of Columbia had jurisdiction of petitioner and of the subject matter charged. If it erred in its determination of these issues its judgment was not for that reason void. However, "Habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of habeas corpus cannot be used as a writ of error'" or appeal. Johnson v. Zerbst, 304 U.S. 458, 465, 466, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.

This court, as was the district court, is entirely without authority to grant the relief prayed, which is the discharge of the petitioner from the custody of the

respondent. Even if we were to accept fully and entertain the verity of his contentions, and the hardships they betoken, still sympathy is not permissible as a substitute for jurisdiction in the exercise of prescribed judicial functions. We are free to concede that his situation contains an appeal which would be entitled at least to consideration in an application for Executive clemency. Petitioner is an aged negro who has served more than half a century in prison. He wants to die a free man. Without recommendation further we suggest he refer an application for relief to the Department of Justice, where, if cognizable at all, it must initiate.

It follows, necessarily, that his application to prosecute his appeal in forma pauperis has no merit and his appeal should be accordingly dismissed. However, to protect the clerk of this court in respect to fees and costs herein, the above application is allowed to permit the appeal to be filed and dismissed.